RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0172P (6th Cir.)
File Name: 01a0172p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

        v.

PHILLIP JAMES GREENE,
    *Defendant-Appellant.*

No. 99-2306

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-80034—Arthur J. Tarnow, District Judge.

Submitted: March 16, 2001

Decided and Filed: May 23, 2001

Before: COLE and GILMAN, Circuit Judges; ALDRICH,
District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:** William W. Swor, Detroit, Michigan, for
Appellant. Patricia G. Gaedeke, ASSISTANT UNITED
STATES ATTORNEY, Detroit, Michigan, for Appellee.

_____

[*] The Honorable Ann Aldrich, United States District Judge for the
Northern District of Ohio, sitting by designation.

1

---

## OPINION

---

ALDRICH, District Judge.  This is a direct appeal of a conviction and sentence entered into by plea agreement. Phillip Greene, the defendant-appellant, appeals the district court's denial of a motion to suppress evidence, arguing that the search warrant was invalid.  For the following reasons, we **AFFIRM** the district court.

### I. Background

On January 19, 1999, Greene was indicted for being a felon-in-possession of a firearm pursuant to 18 U.S.C. § 922(g)(1).  In particular, Greene was accused of possessing three firearms: (1) a Colt .44 revolver, (2) a Savage .22 caliber rifle, and (3) a .38 caliber revolver.  These firearms were obtained by a search of Greene's dwelling and curtilage located at 2139 and 2141 Ashland Street, Detroit, Michigan. The search warrant was authorized by a state court magistrate and executed on January 8, 1999.  In the trial court, Greene moved to suppress the introduction of the three firearms into evidence, claiming that the search warrant was invalid.  Judge Arthur J. Tarnow (E.D. Mich.), denied the motion, stating that "substantial evidence existed to support the state judge's decision to issue the warrant." Tarnow Order of 6/29/99, J.A. at 154.  Greene then entered a guilty plea and reserved the right to appeal the search warrant issue.  On October 20, 1999, Greene was convicted of being a felon-in-possession and was sentenced to 30 months incarceration. Greene timely filed a notice of appeal in this Court.

The search warrant at issue in this case is based on the affidavit of Lieutenant David Hiller ("Lt. Hiller") of the Grosse Pointe Park Police ("GPP Police").  In his affidavit, Lt. Hiller explained that he had been investigating a series of home invasions in Grosse Pointe Park that occurred in the last three months of 1998.  The investigation culminated in the arrest of two suspects on January 2, 1999, David Lamarr

## III. Conclusion

For these reasons, we **AFFIRM** the district court's denial of the motion to suppress and **AFFIRM** Greene's conviction and sentence.

Arnold and Michael Dwayne Houston. Arnold and Houston confessed to the home invasions, stating that they had serious crack cocaine habits and sold stolen property to fund those habits.

During questioning, Lt. Hiller asked Houston where the stolen property from the home invasions could be found. Houston stated, "Arnold took care of that stuff." Search Warrant and Aff., J.A. at 26. Lt. Hiller avers that he "had previous knowledge that stolen property was located at 2139 Ashland and the person who lived there was a B/M Phil Green (sic)." *Id.* Accordingly, Lt. Hiller questioned Houston concerning the house at 2139 Ashland and its resident. Houston replied, "That's his [Arnold's] boy, you will find stuff there." *Id.*

In his affidavit, Lt. Hiller also averred that he was in contact with federal law enforcement officers. These federal officers had received information from a confidential source "that has proven creditable in the past, has been used in both State and Federal search warrants, and has provided information that has resulted in numerous felony arrests." *Id.* The confidential informant provided information about the house at 2139 Ashland, stating that Phillip Greene had resided there for 25 years. The informant also gave valid phone numbers for the lower and upper flats of the house, namely 2139 and 2141 Ashland.

The informant further stated that he had personally purchased narcotics at the residence, at least 12 times, the last time occurring in February 1997. The informant also stated that he had personal knowledge that on December 31, 1998, Ivory Costner, who resided at 1321 Marlborough Street, Detroit, Michigan, picked up a package from 2139 Ashland and delivered it to a known marijuana dealer, known as "Granny." Lt. Hiller avers that the GPP Police conducted a search of 1321 Marlborough on January 5, 1999, where they found "numerous items believed to be stolen, including items from residential home invasions in GPP." *Id.*

The informant also stated that in September of 1998, Greene purchased a shipment of guns, and had been attempting to sell those guns. These included ".44 mags., .40 cal. and .45 automatics," as well an "M-16 auto rifle." *Id.* The informant also stated that in late 1997, he observed computers in the basement and attic of the house located at 2139/2141 Ashland.

Based on this information, Lt. Hiller requested a warrant to search the entire curtilage and dwelling of 2139/2141 Ashland. The warrant specified a sundry list of specific items to be seized which were allegedly taken in home invasions reported to the GPP Police. This list described the items to be seized in detail, including the specific make, model, and in some cases, the serial numbers of numerous computers, cellular phones, firearms, televisions, and VCRs. Jewelry and apparel were identified by their physical description; examples included "lapel pin teal blue with pearls with gold" and "women's brown purse with 'F' on it." *Id.* at 25.

The warrant also included several catch-all phrases. At the end of the detailed list of items previously described, the warrant requested seizure of "any other property that which is not identified as the occupants (sic) personal property." *Id.* The warrant also included a list of general items to be seized:

> All controlled substances, all monies, books, records used in connection with illegal narcotic trafficking, all equipment and supplies used in the manufacture, delivery or sale of controlled substances, all firearms used in connection with the above described activities, evidence of ownership, occupancy, or control of the premises.

*Id.*

In the instant appeal, Greene argues that the search warrant is invalid on its face, and the district court's denial of his motion to suppress the evidence obtained through execution of the warrant was improper. The government opposes.

("The place to be searched was the defendant's home, suggesting that there was some permanence to the defendant's base of operation."). In this case, the confidential informant himself noted that evidence of narcotics trafficking from 2139/2141 Ashland was continuous and ongoing, having purchased narcotics at the dwelling at least twelve times. The confidential informant further stated that on December 31, 1998, Ivory Costner delivered a package from 2139/2141 Ashland to "Granny" a known marijuana dealer. Such information also contributes to a finding that the information was not stale.

Greene next argues that the confidential informant's observation of computers located in the basement and attic of 2139/2141 Ashland is stale. Greene notes that the home invasions investigated by Lt. Hiller occurred in the last three months of 1998. Since the confidential informant last observed computers in 2139/2141 Ashland in late 1997, they cannot be the same computers sought by the GPP Police.

While the computers in the basement and attic of 2139/2141 Ashland in late 1997 cannot *a priori* be the computers stolen in crimes occurring in 1998, Lt. Hiller notes that several computers were stolen in late 1997 through home "B&Es" occurring in Grosse Pointe Park. Consequently, the confidential informant's observation that allegedly stolen property was located at 2139/2141 Ashland in late 1997 supports a finding that there is a fair probability of finding stolen property pursuant to the warrant. *See Davidson,* 936 F.2d at 859. Even if the information concerning the late 1997 observation is somewhat stale, the Sixth Circuit has noted that subsequent corroboration will "refresh" stale information. *Spikes,* 158 F.3d at 924. Here, information concerning allegedly stolen computers in 1997 was refreshed by corroboration from Houston that stolen property was disposed of at 2139/2141 Ashland in late1998.

Since the information in the affidavit is not stale, we affirm the district court on this claim.

cause exists to issue the warrant. *See id.* at 958. As noted earlier, this Court will only reverse a magistrate's decision to grant a warrant if it was arbitrarily exercised. *See United States v. Spikes,* 158 F.3d 913, 923 (6th Cir. 1998).

This Court has previously stated that "the function of a staleness test in the search warrant context is not to create an arbitrary time limitation within which discovered facts must be presented to a magistrate." *Id.* at 923; *Canan,* 48 F.3d at 959. Rather, a staleness determination should be flexible, resting on numerous factors, such as:

> [T]he character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?) . . . .

*Spikes,* 158 F.3d at 923 (citing *Andresen v. State,* 24 Md. App. 128, 331 A.2d 78, 106 (Md. Ct. Spec. App. 1975)).

Greene first argues that the information concerning drug trafficking activity at 2139/2141 Ashland is stale. In the affidavit, the confidential informant noted that he had last purchased drugs at 2139/2141 Ashland in February 1997. Since the search was not executed until January 1999, 23 months after the confidential informant's last purchase, Greene argues that the information is stale.

Greene's argument is unpersuasive. Evidence of ongoing criminal activity will generally defeat a claim of staleness. *See Canan,* 48 F.3d at 958 (though conduct described in affidavit was four years old, evidence of ongoing nature defeated claim of staleness). Moreover, where the criminal activity occurred in a "secure operational base," the passage of time becomes less significant. *Spikes,* 158 F.3d at 924 (where house had become "primary source of crack cocaine in town and . . . was regularly being manufactured on the premises," vintage of information less important); *United States v. Yates,* 132 F.Supp.2d 559, 565 (E.D. Mich. 2001)

## II. Analysis

Greene makes three arguments as to why the search warrant in this case was improperly granted: (1) the warrant was overbroad; (2) the affidavit used to support the warrant was inadequate; and (3) the information in the affidavit was stale. This section will address each argument in turn, identifying the applicable standard of review for each claim, and then applying that standard to the facts of the case.

### A. Particularity and Overbreadth

Greene first argues that the language of the search warrant is overbroad. The Fourth Amendment states "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Particularity "eliminates the danger of unlimited discretion in the executing officer's determination of what is subject to seizure." *See United States v. Blakeney,* 942 F.2d 1001, 1026 (6th Cir. 1991). While a "general order to explore and rummage" is not permitted, *id.,* "the degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought." *United States v. Ables,* 167 F.3d 1021, 1033 (6th Cir. 1999); *see also Blakeney,* 942 F.2d at 1026-27. Consequently, a description is "valid if it is as specific as the circumstances and the nature of the activity under investigation permit." *Ables,* 167 F.3d at 1033. However, infirmity due to overbreadth does not doom the entire warrant; rather, it "requires the suppression of evidence seized pursuant to that part of the warrant . . . , but does not require the suppression of anything described in the valid portions of the warrant (or lawfully seized – on plain view grounds, for example – during their execution)." *United States v. Brown,* 984 F.2d 1074, 1077 (10th Cir. 1993) (internal quotes and citation omitted). This Court reviews *de novo* a district court's determination of particularity. *See United States v. Durk,* 149 F.3d 464, 465 (6th Cir. 1998).

Greene argues that two clauses of the warrant are overbroad. The first clause authorizes confiscation of "any

other property that which (sic) is not identified as the occupant's personal property." Search Warrant and Aff., J.A. at 25. The government concedes that this "catch-all" clause is overbroad, giving the officers "too much discretion to seize personal property not listed." Gov't's Br. at 6-7. However, the government also notes that the appropriate remedy for overbreadth is severing the infirm clause, and not dooming the entire warrant. *See Blakeney,* 942 F.2d at 1027.

In this case, severance of the "catch-all" clause does not change the scope of the district court's denial of the motion to suppress. The long, detailed list of items to be seized preceding the "catch-all" clause includes the make, model, and caliber of four firearms. Moreover, the paragraph immediately succeeding the "catch-all" clause contains a general list of items to be seized, including "all firearms used in connection" with narcotics trafficking. Search Warrant and Aff., J.A. at 25. Assuming that this succeeding clause does not run afoul of Fourth Amendment strictures, severance of the "catch-all" clause does not change the scope of the search or impugn the validity of the seizure of the three firearms which are the basis for Greene's conviction.

The second clause Greene challenges is the aforementioned list of general items to be seized. This list authorizes the seizure of:

> All controlled substances, all monies, books, records used in connection with illegal narcotic trafficking, all equipment and supplies used in the manufacture, delivery or sale of controlled substances, all firearms used in connection with the above described activities, evidence of ownership, occupancy, or control of the premises.

*Id.* at 25. Greene argues that since "[t]here was no specific language that indicated that the officers should search for [] the specific guns that were seized from the residences," this clause is overbroad. Greene's Br. at 12.

Greene's argument is unpersuasive. "Use of a generic term or generic description is not a per se violation of the Fourth

Greene next argues that the information offered by the confidential informant concerning the alleged narcotics trafficking was not specific enough to support a finding of probable cause. Greene argues that the information regarding Ivory Costner delivering a package to "Granny", a known marijuana dealer, lacked any underlying facts to support these assertions. Greene's argument is unpersuasive. Even if information concerning Ivory Costner and "Granny" is discounted, the confidential informant nevertheless asserted that he had personally purchased narcotics at 2139/2141 Ashland at least 12 times.

Greene then argues that most of the information of the affidavit concerns only the residence at 2139 Ashland, and says little about 2141 Ashland. Greene concedes that 2139/2141 Ashland is a split house, with an upper and lower flat. Reading the warrant and affidavit in a commonsense manner, one could conclude that illegal activity, such as drug trafficking or the receipt of stolen property, could be occurring throughout the dwelling, and not confined to only one flat. *See Allen,* 211 F.3d at 973; *Davidson,* 936 F.2d at 859. Moreover, information from the confidential informant establishes that computers were personally observed in the basement and the attic. Lt. Hiller further avers that computers were some of the items missing in the series of home invasions occurring in Grosse Pointe Park in late 1997. Consequently, the magistrate had a substantial basis for permitting a search of the entire structure, rather than just one flat.

Since the affidavit is clearly sufficient, we affirm the district court on this claim.

## C. Staleness

Finally, Greene argues that the information in the affidavit is stale. The standard of review for a staleness determination is the same as the standard for determining the sufficiency of an affidavit. *See United States v. Canan,* 48 F.3d 954, 958-59 (6th Cir. 1995). In sum, a magistrate must determine whether, under the totality of the circumstances, probable

innocent facts is insufficient to support a finding of probable cause.

Greene's argument is mistaken on at least two grounds. First, *Mendonsa* deals not with a confidential informant, but with an anonymous tip. *See Mendonsa,* 989 F.2d at 369. Requirements for searches based on an anonymous tip are significantly more stringent than those based on a confidential informant with a reliable track record vouched for by law enforcement officials. *See Florida v. J.L.,* 529 U.S. 266, 270 (2000) ("Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.") (internal citations omitted). Second, the information from the confidential informant was corroborated by the information gained from Houston and Lt. Hiller. Indeed, all three sources of information, Houston, Lt. Hiller, and the confidential informant, agree that stolen property can be found at 2139/2141 Ashland. Such information is clearly sufficient to support a finding of probable cause. *Cf. Allen,* 211 F.3d at 975-76.

Greene next argues that the affidavit fails to indicate the specific interaction the confidential informant had with law enforcement officials, and therefore, there was insufficient information to support a finding that the confidential informant was reliable. However, Sixth Circuit precedent clearly establishes that the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable. *See Allen,* 211 F.3d at 975; *Finch,* 998 F.2d at 352; *United States v. Dudek,* 560 F.2d 1288, 1292 (6th Cir. 1977). In this case, Lt. Hiller averred that the confidential informant had assisted federal and state law enforcement officials in the past and this information had resulted in numerous felony arrests. Consequently, the magistrate could reasonably have relied on the information gained from the confidential informant for the purposes of the search warrant.

Amendment." *Blakeney,* 942 F.2d at 1027. "[T]he degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought." *See Ables,* 167 F.3d at 1033. Moreover, this Circuit has previously noted that "the language of a warrant is to be construed in light of an illustrative list of seizable items." *Id.* Consequently, general descriptions of property are appropriate if descriptions of specific types of that property have already been furnished, and different types of that property would be relevant in determining the crime. *See id.* at 1034 (generic terms, such as "other items evidencing . . . the concealment of assets," not overbroad where warrant gave specific examples of documents to be seized, such as "bank statements, money drafts, [and] letters of credit," in money laundering case); *Blakeney,* 942 F.2d at 1027 (since specific examples of documents proving ownership or residency were already included, a clause authorizing "indicia of occupancy, residency and/or ownership of the premises" did not violate particularity; such documents would tend to prove facts that would be relevant in establishing the identity of the perpetrators of the robbery).

In this case, Lt. Hiller avers in his affidavit that a confidential informant told federal officers that Greene had engaged in ongoing narcotics trafficking and was selling certain caliber guns from 2139/2141 Ashland. Since two of the crimes alleged in the affidavit are narcotics trafficking and firearms dealing, any firearms associated with the trafficking or dealing are properly seized. *See* 18 U.S.C. § 924(c)(1)(A) (establishing penalties for possession of a firearm in connection with drug trafficking); 18 U.S.C. § 922(a)(1)(A) (prohibition against unlicenced gun sales).[1] Moreover, in the

---

[1] The government also argues that since Greene was convicted of being a felon-in-possession, a search warrant for any firearm will hurdle particularity. However, this argument is not correct. In the Sixth Circuit, corroboration of the fact that the defendant was a felon, as well as evidence of possession of a firearm, is necessary to establish probable cause. *See United States v. Smith,* 182 F.3d 473, 480 (6th Cir. 1999). Here, nothing in the affidavit or warrant establishes that the magistrate

preceding paragraph, four specific firearms, property apparently stolen during the home invasions, are identified. As noted earlier, a generic description, such as "firearms," is appropriate if property of the same type previously described would be relevant to the crime. *See Ables,* 167 F.3d at 1034; *Blakeney,* 942 F.2d at 1027. Here, seizure of other firearms discovered in the search would be relevant in proving the crimes of narcotics trafficking with a firearm, firearms dealing, or disposal of stolen property.

Since the search warrant is not overbroad, we affirm the district court on this claim.

**B. Sufficiency of the Affidavit**

Greene next argues that the information in the affidavit is insufficient to support a finding of probable cause. The standard of review for the sufficiency of an affidavit "is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Davidson,* 936 F.2d 856, 859 (6th Cir. 1991). A magistrate's determination of probable cause is afforded great deference by the reviewing court. *See United States v. Allen,* 211 F.3d 970, 973 (6th Cir.) *cert. denied,* — U.S. —, 121 S.Ct. 251 (2000); *United States v. Finch,* 998 F.2d 349, 352 (6th Cir. 1993); *Davidson,* 936 F.2d at 859. Consequently, a magistrate's decision to grant a search warrant should only be reversed if it was arbitrarily exercised. *See Allen,* 211 F.3d at 973; *Finch,* 998 F.2d at 352; *United States v. Swinehart,* 554 F.2d 264, 267-68 (6th Cir. 1988).

Courts should review the sufficiency of the affidavit in a commonsense, rather than hypertechnical manner. *See Allen,* 211 F.3d at 973; *Davidson,* 936 F.2d at 859. Moreover, review of an affidavit and search warrant should rely on a "totality of the circumstances" determination, rather than a line-by-line scrutiny. *See Allen*, 211 F.3d at 973. Probable

knew that Greene was a prior felon.

cause exists "when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *See Davidson,* 936 F.2d at 859.

Greene first argues that information obtained from Houston contains no "first-hand" knowledge as to whether stolen property was located at 2139/2141 Ashland. Greene notes that Houston specifically states "Arnold took care of [disposing of the stolen property]." Search Warrant and Aff., J.A. at 26. However, Houston, in response to a query from Lt. Hiller concerning the relevance of 2139/2141 Ashland, states "you will find stuff there." *Id.*

Under the applicable standard of review, information gained from Houston provided a substantial basis for a finding of probable cause. Greene's assertion that Houston had no personal, "first-hand" knowledge of the location of the stolen property is immaterial. Rather, the appropriate inquiry is whether the information in Lt. Hiller's affidavit established a substantial basis for a finding by the magistrate that there was probable cause that the stolen property would be found at 2139/2141 Ashland. *See Davidson,* 936 F.2d at 859. Here, the perpetrator of the crime, under direct questioning from the affiant, stated that his partner (Arnold) disposed of the stolen property at 2139/2141 Ashland. Moreover, Lt. Hiller also averred that he had personal knowledge that stolen property was located at that dwelling. Such information is enough to support a finding of probable cause. *Cf. Allen,* 211 F.3d at 971-72 (holding statement by unidentified confidential informant, with no connection to the crime, observing possession of cocaine, enough to establish probable cause).

Greene next argues that information from the confidential informant is insufficient to support the search warrant. Greene notes that a telephone check was used to verify that the confidential informant was familiar with 2139/2141 Ashland. Citing *United States v. Mendonsa,* 989 F.2d 366 (9th Cir. 1993), Greene argues that corroboration of only