**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0798n.06
Filed: November 14, 2007

No. 06-2218

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| GREGORY T. SCHOENINGER, | ) | |
| | ) | **O P I N I O N** |
| **Defendant-Appellant.** | ) | |
| | ) | |

Before: BATCHELDER, MOORE, and COLE, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Defendant-Appellant Gregory Schoeninger ("Schoeninger") appeals his conviction and sentence following a three-day jury trial in March 2006 in the U.S. District Court for the Eastern District of Michigan. The jury convicted Schoeninger of one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and one count of possession of methamphetamine in violation of 21 U.S.C. § 844. Schoeninger's principal argument on appeal is that the district court improperly denied his motion to suppress physical evidence because the affidavit in support of the warrant did not establish probable cause. Because the supporting affidavit extensively detailed a suspected narcotics operation and included evidence, from both an informant and police surveillance, connecting Schoeninger's residence to the operation, we hold that the affidavit established probable cause to search his residence. We therefore **AFFIRM** Schoeninger's conviction and sentence.

## I. BACKGROUND

On March 10, 2005, state and federal law-enforcement officers executed a series of search warrants related to an investigation of methamphetamine manufacture in Macomb and St. Clair Counties, Michigan. The investigation, conducted by the County of Macomb Enforcement Team ("COMET"), included nearly a month of surveillance of various suspected methamphetamine laboratories, including one operated by Demetrius Meffer ("Meffer") in New Haven, Michigan.

In February 2005, COMET officers learned from a confidential informant that a methamphetamine laboratory was active near the New Haven Police Department. Because COMET had previously received information about Meffer's methamphetamine manufacturing, use, and distribution, in February 2005 COMET officers began surveillance of Meffer's residence and a building he frequented, which they suspected housed his methamphetamine laboratory. Over the next few weeks, COMET officers observed Meffer purchase several items and chemicals used in the manufacture of methamphetamine, such as propane, brake pads and brake cleaner, spray paint, and bottled water. COMET officers also watched Meffer and another individual work on a van, removing its roof panel and appearing to construct a hidden compartment. On three separate occasions, a COMET officer approached the suspected laboratory and reported smelling strong chemical odors, describing them "as a sulfur type odor," consistent with the odor of a methamphetamine laboratory. Joint Appendix ("J.A.") at 86, 88-89, 91-92 (Search Warrant and Affidavit, Mar. 9, 2005, at 6, 8-9, 11-12).

On February 12, 2005, COMET officers saw a white female drive to Meffer's suspected lab in a green truck. The woman knocked on the door to the lab, received no answer, and made several phone calls on a cellular phone. Meanwhile, COMET officers conducting surveillance of Meffer's

residence saw him leave his residence and drive directly to the lab, where he met the woman driving the green truck, who had briefly left the lab surveillance area. The officers watched Meffer raise the hood of the woman's vehicle and make several trips in and out of the building, but he carried no tools or parts for working on the vehicle. Shortly after this encounter, officers conducted a traffic stop and identified the driver of the green truck as Schoeninger's wife, Patricia Schoeninger ("Ms. Schoeninger"), a resident of a specified residence in Algonac, Michigan. After Ms. Schoeninger left, COMET officers watched an individual enter Meffer's suspected lab with a bag and leave empty-handed, and another individual enter the building carrying nothing and emerge with a bag. Meffer then left the lab and purchased brake pads, brake cleaner, and refilled a propane tank.

The affidavit stated that both Schoeninger and his wife were "very well known to the police in both Algonac and Clay Township." J.A. at 84 (Aff. at 4). The affidavit claimed that Schoeninger was "well known" as being a "regular methamphetamine user." *Id.* In October 2001, Michigan State Police troopers arrested Schoeninger for possession of crystal methamphetamine, and in September 2003, police officers in Clay Township recovered numerous methamphetamine precursors that had fallen out of Schoeninger's motorcycle saddlebag as he left a grocery store parking lot. Among the items found in the parking lot were thirty-five boxes of matches, six boxes of cold tablets containing pseudoephedrine, and five packages of 100-count clear plastic bags. The store clerk reported that, when she jokingly asked Schoeninger how long the matches would last him, he replied "about two minutes," which is consistent with the amount of time needed to introduce red phosphorus, a chemical contained in matches and matchbooks, into a methamphetamine mixture. J.A. at 85, 94 (Aff. at 5, 14).

On February 21, 2005, COMET officers watched two unknown persons driving a van with Florida license plates arrive at Meffer's suspected laboratory around 10 p.m. The driver exited the van and knocked on the garage door, but received no response. Then, moving to a window of the building where a surveillance camera was located, the driver "began to jump up and down, waving his arms in front of the window," but again received no response. J.A. at 88-89 (Aff. at 8-9). The driver returned to the van and left. COMET officers followed as the van drove to the specified address in Algonac, Michigan, which was the residence of Schoeninger and his wife. The driver and a passenger exited the van and entered the Schoeninger residence.

On March 1, 2005, a confidential informant ("CI") provided information to the St. Clair County Drug Task Force ("DTF") that a methamphetamine laboratory was operating in New Haven, and the CI personally led DTF to Meffer's suspected lab. The CI also claimed that an acquaintance made visits to this lab with a woman identified as Patricia from Algonac. The CI stated that the acquaintance and Patricia "go in [to the lab] and pick up meth for themselves, as well as additional amounts of meth for sale and distribution." J.A. at 89 (Aff. at 9). DTF officers believed "Patricia from Algonac" to be Ms. Schoeninger, and the affidavit noted that "[t]he physical description given by the CI is an exact match of [Ms. Schoeninger's] drivers license image and information." J.A. at 90 (Aff. at 10).

As a result of the information obtained from surveillance and various informants, COMET officers applied for and executed a series of search warrants on March 9 and 10, 2005, uncovering active methamphetamine laboratories at two locations. During the search of Schoeninger's residence in Algonac, Michigan, officers recovered a firearm after Schoeninger alerted them to its presence. The original search warrant for Schoeninger's residence covered only records, proceeds, and firearms

4

relating to drug trafficking. COMET officers found a substance, within ten feet of where they encountered Schoeninger, that they suspected was methamphetamine, and a field test indicated that it was methamphetamine. The officers then sought and obtained a second search warrant authorizing an expanded search for illegal drugs and related materials. During the execution of the second search warrant, officers found methamphetamine, a methamphetamine pipe with residue, two digital scales, thirty cases of match books, a brochure on methamphetamine use, and approximately $421 in cash.

A federal grand jury in the Eastern District of Michigan indicted Schoeninger on July 7, 2005. On September 25, 2005, Schoeninger filed a motion to suppress evidence seized from his residence. The district court held a hearing on January 27, 2006, and then entered an Order denying the motion on February 1, 2006.

During Schoeninger's trial, the government called Christy Bale ("Bale") to testify about conversations he had with Schoeninger while they were housed in the same federal detention facility for several months in 2005 and 2006. Bale testified that Schoeninger "said he had a .44 [caliber firearm] and that his wife was trying to get witnesses put together and he was trying to get his wife to take the rap, the charge, because she didn't have, you know, nothing for a record." J.A. at 211 (Trial Tr. at 31). Bale also testified that, while he was being escorted by United States Marshals in the lockup area on the morning before he was to testify at Schoeninger's trial, he walked past Schoeninger and that Schoeninger made a threatening gesture, sliding his right hand across his throat. Bale immediately told his attorney; after his attorney notified the district court, Bale testified at a hearing that day about the incident. At the conclusion of the government's case, the defense rested without presenting any evidence.

The jury found Schoeninger guilty of both counts. At the sentencing hearing, the district court found a sentencing guideline enhancement for obstruction of justice, relating to the threatening gesture directed at Bale. The court stated that "I certainly believe by a preponderance of the evidence, at the very minimum, that this threatening gesture was made, and therefore the Court will not have the [presentence] report changed and I will add the two points for obstruction of justice." J.A. at 291 (Sent. Hr'g Tr. at 10). As a result, Schoeninger's total offense level remained at 22, as calculated by the Probation Office in Schoeninger's presentence investigation report ("PSR"), which produced a Guideline range of forty-six to fifty-seven months in prison.

The district court sentenced Schoeninger to fifty-seven months in prison and three years of supervised release for the firearm conviction, concurrent with twelve months in prison and one year of supervised release for the methamphetamine conviction. Schoeninger timely filed his notice of appeal.

## II. ANALYSIS

Schoeninger presents two arguments on appeal: first, he argues that his case should be remanded for re-sentencing because the district court found a sentencing-guideline enhancement by the preponderance of the evidence; second, he argues that the district court should have granted his motion to suppress physical evidence because the affidavit in support of the warrant to search his residence did not establish probable cause. Neither of his arguments has merit.

### A. Standard of Proof at Sentencing

Schoeninger argues that "[t]he district court's refusal to determine the sentencing guidelines enhancement beyond a reasonable doubt violates due process under the Fifth Amendment and the right to a jury trial under the Sixth Amendment" in light of *Cunningham v. California*, 127 S. Ct.

6

856 (2007). Appellant Br. at 11. Along with other circuits, we have previously rejected this argument, and the Supreme Court's decision in *Cunningham* offers no support to Schoeninger's argument.

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that mandatory application of the United States Sentencing Guidelines violated the Sixth Amendment, and the Court excised the portion of the Sentencing Reform Act that made the Guidelines mandatory, thereby rendering them advisory. With the Guidelines advisory, we have held that district courts may determine sentencing facts under a preponderance-of-the-evidence standard. *See, e.g.*, *United States v. Mickens*, 453 F.3d 668 (6th Cir.), *cert. denied*, 127 S. Ct. 540 (2006). In *Mickens*, we stated that "[b]y now, it is well established that the preponderance standard does not violate *Booker*, so long as the trial court appreciates that the guidelines are advisory, not binding." *Id.* at 673 (citing cases from the Second, Sixth, and Seventh Circuits); *see also United States v. Cook*, 453 F.3d 775, 777 (6th Cir. 2006) (citing cases from the First, Second, Third, Fourth, Fifth, Seventh, Eighth, Eleventh, and D.C. Circuits).[1]

The Supreme Court's recent opinion in *Cunningham* offers no support to Schoeninger's argument. Indeed, in *Cunningham* the Court reiterated that every Justice "acknowledged that the Federal Guidelines would not implicate the Sixth Amendment were they advisory." *Cunningham*, 127 S. Ct. at 866. The result in *Cunningham* was to strike down California's sentencing system after the Court noted that California's system "resembles pre-*Booker* federal sentencing" and that "California's [system] does not resemble the advisory system the *Booker* Court had in view." *Id.*

_____

[1]Schoeninger makes no argument that the district court viewed the guidelines as binding.

7

at 866 n.10, 870.  Rather than help Schoeninger's argument, *Cunningham* makes clear that an advisory system of guidelines and a preponderance standard do not implicate the Sixth Amendment.

**B.  Whether the Affidavit Established Probable Cause to Search the Schoeninger Residence**

### 1.  Standard of Review

"The standard of review for the sufficiency of an affidavit 'is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'"  *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)).  "This court pays great deference to the determinations of probable cause made by a state magistrate, whose findings 'should not be set aside unless arbitrarily exercised.'" *United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir. 1998) (quoting *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir. 1986)).  "Probable cause exists 'when there is a "fair probability," given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place.'"  *Greene*, 250 F.3d at 479 (quoting *Davidson*, 936 F.2d at 859).  "In reviewing the district court's denial of a defendant's motion to suppress, this Court reviews the district court's findings of fact for clear error and its conclusions of law *de novo*."  *United States v. Miggins*, 302 F.3d 384, 397 (6th Cir. 2002).

### 2.  Analysis

Schoeninger argues that the supporting affidavit in his case failed to establish probable cause because the affidavit "mainly related to defendant Dem[e]trius Meffer" and the affidavit "did nothing to connect the Schoeninger home to methamphetamine production, consumption or presence."

8

Appellant Br. at 14, 16. Schoeninger also claims that information in the affidavit was stale,[2] and he attacks the affidavit's reliance on confidential informants. *Id.* at 16-19. Asserting that "[i]n this case, the basis for the purported reliability of the informant(s) is impossible to ascertain as there is no recitation of how the informant's information was determined to be reliable or how it was corroborated," Schoeninger argues that "the magistrate appears to have abdicated his duty to independently determine whether probable cause existed" to search Schoeninger's residence. *Id.* at 17-18. Each of Schoeninger's arguments lacks merit.

First, although Schoeninger correctly characterizes the affidavit as focusing mainly on Meffer, the affidavit nonetheless contained ample information connecting the Schoeninger residence to suspected illegal activity at Meffer's alleged lab. On February 12, 2005, COMET officers observed Schoeninger's wife drive to Meffer's suspected methamphetamine lab and, after receiving no answer to her knocking, use her cellular phone; at that time, other officers conducting surveillance of Meffer's residence saw Meffer leave and travel to the lab, where he and Ms. Schoeninger met. The officers also described activity that reasonably appeared suspicious and was possibly meant to cover a drug transaction: Meffer raised the hood of her vehicle and made several trips in and out of the suspected lab, but carried no tools for working on the car. After Ms. Schoeninger left the suspected lab, officers observed Meffer leave to purchase more methamphetamine precursors such as propane, brake pads, and brake cleaner. Furthermore, on February 21, 2005, COMET officers

---

[2]Schoeninger makes only two bare assertions that the affidavit contained stale information, *see* Appellant Br. at 16 ("the information contained therein is stale" and "[m]ost of the information was stale"), and he does not identify any particular information as stale. Most of the affidavit focuses on the results of the COMET officers' month-long surveillance of Meffer's suspected methamphetamine lab and is certainly not stale. In any event, an issue merely adverted to in a perfunctory manner in an appellate brief and not developed may be deemed waived. *See United States v. Reed*, 167 F.3d 984, 993 (6th Cir. 1999).

watched a van bearing out-of-state license plates drive to Meffer's suspected lab; when the van's driver received no answer at the lab, the officers followed as the van drove to Schoeninger's residence in Algonac, which the van's occupants entered. Combined with the information from a CI that "Patricia from Algonac" purchased methamphetamine from Meffer for sale and distribution, the van incident furnished a reasonable basis to infer that the Schoeninger residence, like Meffer's suspected lab, was a source known for supplying methamphetamine, and a source known even to individuals outside the community. Finally, the affidavit noted that Schoeninger has a criminal history involving methamphetamine use and possession.

Second, contrary to Schoeninger's assertion that the officers failed to corroborate the CI's information, the affidavit details significant corroborative action. For instance, the CI led officers to the suspected lab, described an individual known as "Patricia from Algonac" as a customer of the lab—and a dealer in her own right—and provided a physical description that matched Ms. Schoeninger's driver's-license information. Furthermore, COMET officers had personally observed Ms. Schoeninger visit Meffer's suspected methamphetamine lab on another occasion, corroborating the CI's claims that "Patricia" would go to the lab "and pick up meth . . . for sale and distribution." J.A. at 89 (Aff. at 9). The incident involving the out-of-town van visiting the Schoeninger residence after unsuccessfully attempting to make contact at Meffer's suspected lab also tended to confirm the CI's assertion that Patricia from Algonac purchased methamphetamine in amounts sufficient for distribution.

Finally, our cases demonstrate that probable cause existed to search the Schoeninger residence. Schoeninger portrays the affidavit in his case as similar to those in *United States v. Leake*, 998 F.2d 1359 (6th Cir. 1993) (affirming suppression of evidence by district court), and *United*

10

*States v. Weaver*, 99 F.3d 1372 (6th Cir. 1996) (reversing district court's denial of motion to suppress). Schoeninger's case, however, differs from each in significant ways.

In *Leake*, we affirmed the district court's suppression of evidence, citing two problems with the affidavit in that case. We noted that "the information provided by the anonymous caller in this case was not 'rich' in relevant detail" and that the officer's "corroboration of the information provided by the caller was simply insufficient." *Leake*, 998 F.2d at 1365. We concluded that "[u]ltimately, this case demonstrates the importance of taking sufficient time to verify an anonymous tip before a warrant is requested," explaining that "[t]he supporting affidavit was too vague and [the officer's] limited two-night surveillance was insufficient to verify important elements of the anonymous caller's information." *Id.* The affidavit and corroborative work in Schoeninger's case stands in stark contrast to the facts in *Leake*: here, the affidavit spanned nearly twenty pages, contained extensive details regarding the purchases and visits of various individuals connected to the suspected methamphetamine lab, included information supplied *not* by an anonymous informant but by a corroborated confidential informant, and involved a nearly one-month period of surveillance.

The differences between Schoeninger's case and *Weaver* are likewise clear. In *Weaver*, we noted that "the only claim of possible wrongdoing [in the affidavit] is the averment that, within three days prior to the affidavit date, the informant was on the suspect['s] premises and, while there, he saw some quantity of marijuana 'expressly for the purpose of unlawful distribution.'" *Weaver*, 99 F.3d at 1378. The affidavit in *Weaver* was largely pre-printed, containing essentially no particularized information beyond that which "could arguably be obtained by any person passing the [suspect's] house." *Id.* at 1378-79. We specifically observed that although the officer had received

11

a tip about the defendant's illegal activities, he "undertook no substantive independent investigative actions to corroborate his informant's claims, *such as surveillance* of the [defendant's] residence for undue traffic." *Id.* at 1379 (emphasis added). In contrast, the affidavit supporting the warrant in Schoeninger's case was not lacking for detail, and the officers conducted significant surveillance. Further, they corroborated the information that the CI provided: the CI led officers to the suspected lab and offered a description of "Patricia from Algonac" that matched the information on Ms. Schoeninger's driver's license.

Although the government argues that we have "held that evidence of drug dealing is likely to be found where dealers live," Appellee Br. at 19 (citing *United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002), we have recently emphasized that a suspect's status as a drug dealer alone is insufficient to establish probable cause to search the suspect's residence. *See United States v. McPhearson*, 469 F.3d 518, 525 n.3 (6th Cir. 2006) ("[O]ur case law does not 'support[] the proposition that the defendant's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home.'") (quoting *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005)); *see also United States v. Laughton*, 409 F.3d 744, 747-49 (6th Cir. 2005) (describing cases as requiring some "connection between the residence to be searched and the facts of criminal activity that the officer set out in [the] affidavit"). In any event, the affidavit in this case contained evidence connecting criminal activity to the place to be searched. Beyond the CI's assertion that Ms. Schoeninger engaged in the distribution of methamphetamine, the COMET officers' surveillance revealed that an out-of-state vehicle proceeded to the Schoeninger residence immediately after an unsuccessful attempt to enter Meffer's suspected lab, which tends to raise a fair probability that evidence of criminal activity would be found at the Schoeninger residence. The officers here also

12

relied on more than the CI's bare assertion that "Patricia from Algonac" was a dealer and user who frequented a lab in New Haven, Michigan. The officers had the CI physically lead them to Meffer's lab, the location from which the CI claimed to know that "Patricia from Algonac" purchased methamphetamine. Moreover, the officers had been conducting surveillance on that location for nearly a month, during which time they had observed Ms. Schoeninger visit the suspected lab under suspicious circumstances.

In sum, our cases support affirming the district court's denial of Schoeninger's motion to suppress because the affidavit in this case bears little relation to those found problematic in prior cases and because the contents of the affidavit adequately established probable cause to believe that the officers would find evidence of criminal activity at the Schoeninger residence.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Schoeninger's conviction and sentence.