NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0450n.06

No. 17-2154

FILED
Aug 29, 2018
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| JUSTIN WALLING | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: ROGERS and BUSH, Circuit Judges; WATSON, District Judge.*

**MICHAEL H. WATSON**, District Judge. A magistrate judge authorized a search warrant for Appellant Justin Walling's ("Walling") residence based on an affidavit submitted by Phillip Hesche ("Hesche"), a deputy sheriff with the Ionia County, Michigan Sheriff's Office. The warrant allowed the search of certain electronic devices located at Walling's residence for evidence of two crimes—1) coercion and enticement of a minor and 2) transfer of obscene material to minors—but also permitted a search of these devices for child pornography and erotica. Evidence discovered from the search of these devices led the police to discover another sexual abuse crime by Walling, the one for which he was convicted here. In denying Walling's motion to suppress evidence, the district court found there was probable cause to support a search for evidence of coercion and enticement of a minor as well as transfer of obscene material to minors, but no probable cause to support a search for child pornography. The district court further found that the portions of the warrant relating to child pornography were severable, and in any event, because the

_____

* The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

officers relied on the issuance of the warrant in good faith, Walling's motion to suppress was denied. We affirm.

I.

On May 17, 2016, a magistrate judge authorized a search warrant for Walling's residence at 822 Grindle Drive, Lowell, Michigan. Hesche submitted an affidavit in support of the application for a warrant. The Introduction and Purpose of the affidavit indicated that the warrant would permit a search "for evidence, contraband, fruits, and instrumentalities of crime in violation of 18 U.S.C. § 2422(b) (coercion and enticement of a minor) and 18 U.S.C. § 1470 (transfer of obscene material to minors)." The factual background of the investigation provided in Hesche's affidavit related almost exclusively to these two crimes.

The affidavit also included a substantial amount of general information regarding child pornography, including a list of characteristics common to people involved in child pornography as well as descriptions of how devices would need to be searched in order to locate child pornography. Section II of Attachment B to the affidavit, which listed the "Items to be Seized and Searched," was incorporated by reference into the warrant, and sought to allow seizure of correspondence and contact information pertaining to child pornography, any child pornography actually found, and any material that was "child erotica."

Notwithstanding these pieces of information, the conclusion of the affidavit stated only that there was probable cause for a search related to coercion and enticement of a minor and transfer of obscene materials. Additionally, the "Items to be Seized and Searched" that were incorporated into the warrant stated that the "items will be searched and seized to locate property, evidence, fruits, and instrumentalities" of those two crimes, not child pornography.

As Hesche stated in his affidavit in support of the search warrant, on January 15, 2016, he was contacted by the mother of a 13-year-old girl ("AFP"), who had been receiving messages via Facebook Messenger from Walling.[1] Hesche obtained permission to review the messages exchanged between AFP and Walling and to assume AFP's role in the conversation with Walling in an attempt to learn why he was communicating with AFP. Prior to Hesche taking over the communications, AFP and Walling only messaged over the course of approximately nine minutes and the conversation was not overtly sexual. In that time, Walling asked AFP if she "want[ed] to chill . . . sometime as friends only," offered to send a picture of himself, and asked AFP her age (which was not answered until after Hesche took over the communication).

Once Hesche began messaging under AFP's name, the conversation became sexually explicit. After Walling was told that AFP was fourteen, he nevertheless proceeded to, among other things, make three requests for a fully-clothed picture of AFP, discuss meeting without AFP's mother knowing, state that he had previously had sex with a different fourteen-year-old girl in addition to "over less [sic] than 10 [other girls] younger than 18," graphically discuss the ways AFP and Walling would have sex if they met, and send a picture of his genitals to AFP.[2] This conversation took place initially on Facebook Messenger but continued on KiK.[3]

Case investigators used investigative subpoenas to obtain subscriber information for the individual sending the messages, which identified Walling, and his address in Lowell, Michigan. Follow-up with the Lowell Police Department revealed that Walling had made regular, required registrations as a sex offender at the identified address.

---

[1] Although Walling identified himself on Facebook as Justin Blade, it was eventually discovered that Walling was sending these messages.

[2] Walling did at one point state that AFP is "to [sic] young to mess around with like that sorry but not going to jail for a [criminal sexual conduct charge]."

[3] KiK is a mobile-only messaging application that allows users to create a pseudonym to communicate via text.

Based on the facts as presented in Hesche's affidavit, the magistrate judge issued a search warrant that was executed on May 31, 2016. During the search, officers seized six cell phones, a micro SD card, a laptop, a tablet, and an Xbox, none of which provided evidence used at trial. However, Walling was present when the warrant was executed and spoke with the officers. During this conversation, Walling admitted communicating and having sex with two underage girls as well as possessing nude or sexually explicit pictures of the girls.

Based on Walling's description of one of the underage girls, police were able to locate the victim in this case, KP. The police then used some information from Defendant's cell phone to assist in the investigation and in eliciting information from KP. Statements made by KP and the contents of her phone were the evidence that led to Walling's indictment.[4]

II.

In general, when considering the denial of a motion to suppress, we review "the district court's factual findings for clear error and its legal conclusions *de novo*." *United States v. Lapsins*, 570 F.3d 758, 763 (6th Cir. 2009). Nevertheless, a magistrate judge's determination of probable cause supporting a warrant is entitled to "great deference." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). When reviewing a search warrant for probable cause, we do not engage in "line-by-line scrutiny [of an underlying affidavit]," but rather consider the "totality of the circumstances." *United States v. Allen*, 211 F.3d 970, 972–73 (6th Cir. 2000) (en banc) (quoting *Gates*, 462 U.S. at 246 n.14). Therefore, our "after-the-fact scrutiny . . . of the sufficiency of an affidavit should not take the form of *de novo* review." *Gates*, 462 U.S. at 236.

---

[4] No charges were brought based on the text messages exchanged between AFP (or Hesche) and Walling.

The Fourth Amendment requires that warrants be issued only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. In issuing a search warrant, a magistrate judge is required "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Lapsins*, 570 F.3d at 763–64 (quoting *United States v. Terry*, 522 F.3d 645, 648 (6th Cir. 2008)). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* at 764 (quoting *Gates*, 462 U.S. at 243 n.13).

A.

Walling does not dispute that, as the trial court found, there was probable cause to search for evidence of coercion and enticement of a minor and transfer of obscene material for minors. He argues only that there was no probable cause to search for evidence of child pornography or child erotica.

As an initial matter, the structure of the affidavit leads to some confusion about the true purpose of the search. As previously noted, the Introduction and Purpose section of the affidavit began by stating that the application for a warrant was made to search for evidence of coercion and enticement of a minor and transfer of obscene material. Likewise, the Conclusion does not include any reference to child pornography, only the other two crimes. However, numerous paragraphs in between refer to child pornography. (R. 21-1, Page ID# 118) (providing a definition of "child pornography" under 18 U.S.C. § 2256 and stating that there is probable cause to believe child pornography statutes have been violated); (*id.* at 119) (stating that the search should include

storage devices that could contain evidence of child pornography); (*id.* at 146–48) (describing characteristics common to individuals with a sexual interest in children).

But while there is significant discussion of child pornography, there are limited factual allegations within the four corners of the affidavit that Walling engaged in the receipt or possession of such materials. The extent of such factual allegations in the affidavit consisted of the conversation between AFP (or Hesche) and Walling described above, which included Walling's request for a fully-clothed picture of AFP; the pictures sent by Walling to AFP; and Walling's criminal history. This criminal history included Walling's guilty plea in 2007 to two counts of attempted criminal sexual conduct ("CSC") with a person between the ages of 13–15 and a guilty plea in 2008 to one count of possession of child sexually abusive materials. The affidavit also stated that Walling's sex offender registry noted an earlier conviction on Walling's juvenile record in 2004 for first degree CSC.

While the affidavit here provided substantially more probable cause than the affidavit in *United States v. Hodson*, 545 F.3d 286, 293 (6th Cir. 2008) (finding that a warrant lacked probable cause to search for child pornography when it only established probable cause for child molestation), we assume for purposes of this appeal that the district court correctly determined that there was not probable cause to search for evidence of child pornography.

III.

A determination that the warrant included some information that did not support probable cause "does not doom the entire warrant." *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001). Instead, the Court must sever the offending portions of the warrant, "suppress any evidence

collected under it, and admit the evidence collected under the valid portions that remain." *United States v. Castro*, 881 F.3d 961, 965 (6th Cir. 2018) (citing *Greene*, 250 F.3d at 477).

The evidence used to link Walling to the victim in this case was Walling's statements to officers during the course of the search and information that was found on his cell phone. Removing all portions of the affidavit that relate to child pornography would still have provided probable cause for a search of Walling's cell phone for evidence of coercion and enticement of a minor and transfer of obscene materials. (R. 21-1, Page ID# 118) ("This investigation has revealed that there is likely a computer device or devices with an internet connection . . . that have been used to transfer sexually explicit material to and solicit sex from a minor under the age of 16 years."); (*id.* at 156–59) (including cellular telephones in the list of items to be searched and seized for evidence of coercion and enticement of a minor and transfer of obscene material to minors). This more limited version of the warrant would also have resulted in the officers being at Walling's home to obtain his incriminating statements. Therefore, the evidence obtained from the search was collected under a valid portion of the warrant and is severable.

Walling argues that "[t]he lack of support for the full scope of the warrant made it a general warrant." However, as discussed above, the cure for an overbroad warrant is to sever the infirm portions, not declare the entire search invalid. *United States v. Castro*, 881 F.3d 961, 965 (2018) (citing *Greene*, 250 F.3d at 477).

Finally, Walling urges us to adopt the Tenth Circuit's test for severability as articulated in *United States v. Sells*, 463 F.3d 1148 (10th Cir. 2006). In the approximately twelve years since

*Sells* was decided, we have never adopted its multi-step approach to severability of a search warrant. The facts and argument presented in this case do not compel us to do so now.

## IV.

For all these reasons, we AFFIRM the district court's judgment.