*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0304p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

MICHAEL MASTROMATTEO,

        *Defendant-Appellant.*

No. 06-2349

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 05-80623-002—Marianne O. Battani, District Judge.

Argued: July 22, 2008

Decided and Filed: August 19, 2008

Before: BOGGS, Chief Judge; MOORE and CLAY, Circuit Judges.

---

## COUNSEL

**ARGUED:** Raymond J. Rigat, THE RIGAT LAW OFFICE, Clinton, Connecticut, for Appellant. Patricia G. Gaedeke, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Raymond J. Rigat, THE RIGAT LAW OFFICE, Clinton, Connecticut, for Appellant. Patricia G. Gaedeke, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

---

## OPINION

---

      KAREN NELSON MOORE, Circuit Judge. Defendant-Appellant, Michael Mastromatteo ("Mastromatteo"), appeals the district court's denial of a motion for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), and he challenges the reasonableness of his sentence. Mastromatteo pleaded guilty to four methamphetamine-related counts, and he did so without the benefit of a written plea agreement. Despite the absence of a written plea agreement, Mastromatteo asserts that he entered a conditional plea nonetheless and may challenge the denial of the *Franks* hearing. We agree. Although Mastromatteo is not barred from challenging the denial of the *Franks* hearing on the basis of his plea agreement, we conclude that Mastromatteo did not establish a legitimate expectation of privacy in the Lenfesty property, the only property at issue on appeal. Thus, Mastromatteo lacks standing to challenge the denial of the *Franks* hearing. Furthermore, even if Mastromatteo had standing to challenge the search warrant, the district court properly denied the *Franks* hearing because the warrant, stripped of any allegedly false statements, contains evidence

1

sufficient to support the magistrate judge's finding of probable cause. Lastly, we hold that Mastromatteo's sentence was reasonable. For the reasons described below, we **AFFIRM** the district court's denial of Mastromatteo's motion for a *Franks* hearing and **AFFIRM** Mastromatteo's sentence.

## I. BACKGROUND

### A. Factual Background

This case involves the prosecution of a methamphetamine production and trafficking ring. We discussed the factual background of this case in the appeal of one of Mastromatteo's co-defendants in *United States v. Schoeninger*, 254 F. App'x 504 (6th Cir. 2007) (unpublished). Although the facts in this case overlap with those in *Schoeninger*, we set out the facts anew as this case presents different questions.

In 2002, officers on the County of Macomb Enforcement Team ("COMET") drug taskforce in Michigan received a tip from a confidential informant identifying Demitrius Meffer ("Meffer") as an organizer in the construction of a methamphetamine lab. No action was taken at that time, but on February 7, 2005, COMET received a tip "from a one-time credible confidential source that a clandestine meth lab was operating in the area" near the New Haven Police Department. Joint Appendix ("J.A.") at 48 (Gratiot Ave. Warrant Aff. at 3). The tip did not provide any additional information.

On the basis of this vague tip, COMET began scouring the area. While canvassing the area, the agents observed a 2003 Ford F-250 pick-up truck that was registered to Meffer, according to the affidavit for the search warrant. It was subsequently discovered that the warrant affidavit was incorrect; the pick-up truck was not registered to Meffer but was instead registered to a woman living at Meffer's residence.

Already suspicious because of the 2002 tip implicating Meffer in methamphetamine production, COMET began a comprehensive surveillance of Meffer's activities. The surveillance included the suspected methamphetamine lab on Gratiot Avenue, which was where the officers initially spotted the pick-up truck; COMET also surveilled an address on North Zacharias Court, Meffer's residence. Eventually, the surveillance expanded to include an address on Lenfesty. Using the results of the surveillance as his primary evidence, on March 9, 2005, Lieutenant Richard Margosian ("Margosian") filed an affidavit requesting a search warrant for the Gratiot Avenue property. Nearly identical affidavits were filed to obtain search warrants for other properties including the Lenfesty address.

According to the Gratiot-warrant affidavit, on February 12, 2005, the wife of a known methamphetamine user arrived at the Gratiot address, and after getting no response at the building, she made a few phone calls and left. The woman returned a short while later when Meffer arrived at the building. Meffer raised the hood on the woman's vehicle and gave "the appearance that he may be working on the truck, when in fact, he made several trips from the truck into the building without tools and/or parts in hand." J.A. at 49 (Gratiot Warrant Aff. at 4). According to Meffer's counsel, however, surveillance tapes make it "clear he's working on this truck." J.A. at 157 (Dec. 9, 2005, Evid. Hr'g at 26:23-24).

On the same day, officers observed a man holding a paper bag walk from a nearby building and enter the Gratiot property; the man left empty handed. Another man walked from the same nearby building and entered the Gratiot property carrying no bags, and officers observed him leave holding a green bag.

Later that same day, Meffer left the Gratiot property in order to fill a propane tank. According to the affidavit, "[p]ropane tanks are consistently used in the manufacturing of meth." J.A. at 60 (Gratiot Warrant Aff. at 15). Meffer also went to an automobile-parts store, and officers observed him purchasing brake pads and brake cleaner. Brake cleaner contains a chemical used in the manufacture of methamphetamine. Surveillance reports, however, did not mention the brake cleaner and indicated only that Meffer "was observed buying some brakes." J.A. at 78 (Feb. 12, 2005, Surveillance Activity Report at 2).

On February 15, 2005, the surveillance continued. According to the warrant affidavit, officers observed that two surveillance cameras placed in the front window protected the Gratiot property. Later that evening, agents followed Meffer into a store where they saw Meffer purchase bottled water and three cans of spray paint. The spray paint contained chemicals "consistently used in the production and manufacturing of methamphetamine." J.A. at 62 (Gratiot Warrant Aff. at 17).

According to the warrant affidavit, after Meffer returned to the Gratiot address, a detective approached the building and "detected a strong chemical odor coming from the building." J.A. at 52 (Gratiot Warrant Aff. at 7). The officer "described it as a sulfur type of odor." *Id.* In contrast to the affidavit, surveillance reports stated only that the officer "observe[d] a chemical type odor" in the "vicinity" of the Gratiot property. J.A. at 79 (Feb. 15, 2005, Surveillance Activity Report at 1). Furthermore, according to the affidavit, the smell came "through an air vent located on the west side of the building." J.A. at 62 (Gratiot Warrant Aff. at 17). An investigator with the Federal Defender's Office, however, could find no air vents located on the Gratiot property.

On February 16, 2005, agents observed Meffer enter the residence of a suspected methamphetamine producer. According to the warrant affidavit, later that evening agents observed Meffer remove something from the inside of his truck and bring it into the Gratiot address. The surveillance report, however, states only that officers observed Meffer "out doing something in [the] bed of" the pick-up truck. J.A. at 82 (Feb. 16, 2005, Surveillance Activity Report at 3).

On February 21, a detective again detected a chemical smell near the Gratiot property. It was "a strong chemical odor which was consistent with the sulfur type odor [that the officer] detected on 02-15-05." J.A. at 55 (Gratiot Warrant Aff. at 10).

The affidavit stated that on March 1 a confidential informant for another drug taskforce identified the Gratiot address as a methamphetamine lab.

On March 3, Meffer drove from the Gratiot address to the Lenfesty property. According to the affidavit, "Meffer and another male subject were observed to be carrying items from [Mastromatteo's] van into the building at . . . Lenfesty." J.A. at 57 (Gratiot Warrant Aff. at 12). The surveillance report, however, did not identify Meffer as one of the individuals carrying items. Instead, the report stated that "2 male subjects walk[ed] from the building to the van carrying items into the building." J.A. at 86 (Mar. 3, 2005, Surveillance Activity Report at 1). The agents then observed an individual work on the top of the van parked at the Lenfesty address; the officers believed the individual was creating a secret compartment. Later that night, Meffer drove to a Wal-Mart, purchased Rustoleum spray paint and more water, and then returned to the Gratiot address.

On March 4, officers observed Meffer using welding equipment to repair a trailer. The welding equipment included hydrogen gas, which "is also used in the manufacturing of meth." J.A. at 66 (Gratiot Warrant Aff. at 21).

The warrant affidavit stated that on March 8, a detective again detected "a sulfur type odor, consistent with the odor of a clandestine meth lab. And, the same sulfur type odor from 02-15-05 and 02-21-05." J.A. at 58 (Gratiot Warrant Aff. at 13). The surveillance report, however, stated

only: "Odor' [sic] detected behind . . . Gratiot." J.A. at 93 (March 8, 2005, Surveillance Activity Report at 1).

On March 9, 2005, a magistrate judge issued search warrants for several properties including the Gratiot and Lenfesty properties. On March 10 and 11, officers executed the warrants. At the Gratiot address, agents discovered a methamphetamine lab. The search of the Lenfesty address revealed a suspected methamphetamine lab and "various hazardous materials used to make methamphetamine." J.A. at 313 (Presentence Investigation Report ("PSR") at 9).

## B. Procedural Background

On August 23, 2005, a grand jury indicted Mastromatteo. On March 7, 2006, in the Third Superseding Indictment, the grand jury charged Mastromatteo with four methamphetamine-related counts. The four counts were: conspiracy to manufacture and distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846; attempting to manufacture more than five grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846; maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a)(1); and endangering human life while illegally manufacturing methamphetamine in violation of 21 U.S.C. § 858.

On September 26, 2005, one of Mastromatteo's co-defendants, Meffer, filed a motion to suppress evidence and obtain a *Franks* evidentiary hearing. The motion asserted that affiant Margosian made statements in his affidavit that "were knowingly and intentionally false and/or made with a reckless disregard for the truth." J.A. at 15 (Mot. to Supp. Evid. at 2). The motion specifically challenged the searches of the properties on Gratiot, North Zacharias, and Lenfesty. In support of his *Franks*-hearing request, Meffer identified eight allegedly false statements from Margosian's affidavit:

1.   The affidavit stated that the 2003 Ford F-250 pick-up truck was registered to Meffer, when a check of the registration revealed that it was not registered to Meffer.
2.   The affidavit stated that smells emanated from air vents at the Gratiot property, when in fact there are no air vents on the building.
3.   The affidavit stated that a detective detected a consistent odor on February 15, February 21, and March 8, yet the surveillance reports did not indicate that the odor on March 8 was the same as the odor smelled during the previous instances. Also, the March 8 surveillance report did not indicate that the smell was coming from the Gratiot address.
4.   The affidavit stated that officers observed Meffer buying brakes and brake cleaner, a chemical used to manufacture methamphetamine, but the surveillance report stated only that Meffer was buying brakes.
5.   The affidavit stated that Meffer pretended to perform automobile maintenance. In contrast, the surveillance report said only that Meffer "appear[ed] to be fixing her truck." J.A. at 18 (Mot. to Supp. Evid. at 5) (alteration in original).
6.   The affidavit stated that on February 17, officers observed Meffer remove something from his truck and take it into the Gratiot building, but the surveillance report never stated that he took something inside the building.
7.   The affidavit stated that on March 3, 2005, Meffer and another subject took items into the Lenfesty building. In contrast, the surveillance report said only that two men took items into the Lenfesty building without identifying one of the men as Meffer.
8.   The affidavit stated that on March 4, officers observed Meffer using welding equipment and hydrogen gas, a compound used in methamphetamine

manufacturing, but the surveillance reports indicated only that Meffer was "working on a trailer." J.A. at 19 (Mot. to Supp. Evid. at 6).

In addition to his motion for a *Franks* hearing, Meffer filed a motion to suppress as beyond the scope of the search warrant evidence seized from his residence at North Zacharias Court. On December 1, 2005, Mastromatteo sought to join both of Meffer's motions.

The government opposed the suppression motions with regard to Mastromatteo, claiming that he "failed to allege a legitimate expectation of privacy in any of the searched premises." J.A. at 101 (Gov't Br. Opposing Suppression at 3). The government further argued that even if Mastromatteo "has alleged a privacy interest in the commercial premises located at . . . Lenfesty . . . the defendant's expectation of privacy in that premises is diminished." *Id.*

At an evidentiary hearing to consider the *Franks* hearing and suppression motions, the government argued that differences between the surveillance logs and the affidavit do not signify that the affidavit is incorrect. The government suggested that the surveillance logs are incomplete, in-the-moment depictions of fast-moving events; when conducting surveillance, many officers may be "rattling off information on a radio and one particular officer is jotting down notes. It is not a report . . . ." J.A. at 164 (Evid. Hr'g at 33:1-3). The government asserted that the warrant affidavit was written after consultation with the surveilling officers in order to develop more fully the information contained in the surveillance reports.

On January 26, 2006, the district court denied the defendants' motions on the basis that the defendants lacked legitimate expectations of privacy in the searched properties. The court stated that "[w]e know as to the Gratiot shop there was nothing, apparently it was a commercial shop used for the production of Methamphetamines, and this does not trigger an expectation of privacy." J.A. at 190 (Jan. 26, 2006, Hr'g at 6:21-24). The court also evaluated the allegations offered in support of the *Franks* hearing, concluding that the defendants' allegations did not merit a *Franks* evidentiary hearing. The court stripped from the affidavit any references to the 2003 Ford pick-up truck, which was not registered to Meffer, but still found that the affidavit established sufficient probable cause to support the issuance of a search warrant.

On June 1, 2006, Mastromatteo announced his intention to plead guilty to all charges, even in the absence of a Rule 11 plea agreement. Although Mastromatteo's counsel seemed to indicate that Mastromatteo was not entering a conditional plea, his counsel made it clear that Mastromatteo "wants to preserve his appeal rights in this matter as regards the, ahh, regarding the search and seizure issue." J.A. at 226 (June 1, 2006, Plea Hr'g at 3:23-25). Mastromatteo's attorney then stated that the government agreed "that in fact his appeal rights would be preserved" even in the absence of a Rule 11 plea agreement. J.A. at 227 (Plea Hr'g at 4:3-4). Although Mastromatteo's counsel's statement was confusing at best and legally incorrect at worst, the district court responded by saying "Okay." J.A. at 227 (Plea Hr'g at 4:5). In response to this discussion, the government prosecutor further muddied the debate by stating that the government was not agreeing to a conditional plea, but despite that statement, the government added:

It seems as if the defendant wanted to appeal that issue to the Court of Appeals, he may do that. It's just under a different standard of review and the Court of Appeals might reject it, but that's up to him.
    I'm not saying that he can't litigate that before the Court of Appeals but we're not entertaining it.

J.A. at 229 (Plea Hr'g at 6:5-10).

Later during the plea hearing, Mastromatteo explained for the first time his connection to the Lenfesty property. His attorney stated that "the Lenfesty address . . . was the commercial premises

owned and maintained by" Mastromatteo. J.A. at 231 (Plea Hr'g at 8:4-6). In the same proceeding, Mastromatteo told the court that the Lenfesty property was "a family building." J.A. at 246 (Plea Hr'g at 23:23).

After Mastromatteo pleaded guilty, the United States Probation Office prepared a PSR, which calculated Mastromatteo's base offense level to be 26. The PSR then added a three-level enhancement for creating a substantial risk of harm to human life and a two-level enhancement for possession of a dangerous weapon under 2005 United States Sentencing Guidelines Manual ("U.S.S.G.") § 2D1.1(b)(1). The PSR then subtracted three levels for acceptance of responsibility, yielding a total offense level of 28. With a criminal history category of I, the PSR calculated the advisory Guidelines imprisonment range to be 78 to 97 months, with a five-year statutory minimum sentence on the two counts of conspiracy and attempting to manufacture methamphetamine.

Mastromatteo objected to the application of the two-level dangerous-weapon enhancement, noting that there was no evidence tying the weapons to the charged offenses. The district court agreed with Mastromatteo and removed the two-level dangerous weapon enhancement. The court then calculated an advisory Guidelines range of 63 to 78 months of imprisonment.

At his sentencing hearing, Mastromatteo asked that the district court sentence him to 60 months of imprisonment. As his attorney stated on his behalf: "You got a mandatory minimum of five years. I think that that serves all the ends of justice to give him that mandatory minimum. The Court's hands are tied to at least give him that but I think that that's more than enough in this case, Your Honor. I ask you to sentence him to what you have to sentence him to." J.A. at 295 (Oct. 17, 2006, Sent. Hr'g at 19:20-25). In response, the district court noted several factors that counseled toward a lower sentence. For instance, the district court observed that Mastromatteo did not have a criminal record, that he endured a lifetime of drug abuse, and that he had a lot of support from family and friends. However, the district court also indicated several factors pushing it towards a higher sentence. The district court, echoing the 18 U.S.C. § 3553(a) factors, pointed out that a message must be sent to the public because Mastromatteo had, until this point, avoided punishment for a lifetime of crime; that it must deter him from future criminal conduct; that it must "protect the public from further crimes," J.A. at 299 (Sent. Hr'g at 23:19-20); that it must provide Mastromatteo with "educational or vocational training," J.A. at 299 (Sent. Hr'g at 23:24); and that it should provide Mastromatteo with drug treatment.

After listing these factors, the district court noted that the Guidelines were advisory but believed that they provided "a good idea of how I should apply those factors for you." J.A. at 300 (Sent. Hr'g at 24:16-23). On the basis of the § 3553(a) factors, the district court sentenced Mastromatteo to a 63-month term of imprisonment. Mastromatteo filed a timely notice of appeal.

## II. JURISDICTION

Mastromatteo pleaded guilty without the benefit of a clear, written conditional plea; this raises an initial question of whether we may properly hear this appeal. On appeal the government concedes that Mastromatteo did make a conditional plea, but just as non-diverse parties cannot agree to bring a case in diversity, if Mastromatteo's failure to make a clear, written conditional plea is a failure of a jurisdictional nature, then we would be unable to proceed despite the parties' agreement. We hold that Mastromatteo's failure to obtain a written conditional plea is not a jurisdictional bar to our hearing this appeal.

Federal Rule of Criminal Procedure 11(a)(2) states that "[w]ith the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, *reserving in writing* the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea." FED. R. CRIM. P.

11(a)(2) (emphasis added). We have held that Rule 11(a)(2) "places an affirmative duty on the defendant to preserve *all* potential collateral challenges through the preservation mechanism of" the rule. *United States v. Pickett*, 941 F.2d 411, 416 (6th Cir. 1991). Failure to enter a conditional plea bars this court from hearing an appeal of a conviction.[1] *United States v. Bahhur*, 200 F.3d 917, 923 (6th Cir. 2000); *Pickett*, 941 F.2d at 416-17.

Unlike the defendants in *Pickett* and *Bahhur*, who did nothing to signal their intent to obtain a conditional plea with respect to the rulings that they sought to challenge on appeal, Mastromatteo made it very clear that he intended to reserve his right to appeal the denial of the suppression motions. Thus, Mastromatteo's case is similar to the Seventh Circuit case *United States v. Yasak*, 884 F.2d 996 (7th Cir. 1989). *Yasak* dealt with a defendant's failure to obtain a *written* conditional plea: "Here, there was no written reservation of Yasak's right to review the district court's denial of his motion to dismiss; however, all parties and the district court believed this was to be a conditional plea. On appeal, both the government and Yasak agree the plea was conditional, and argue that we may hear this appeal even without a written reservation of Yasak's right to appeal." *Id.* at 999. The court in *Yasak* declined to define Rule 11's writing requirement as jurisdictional, instead stating that "it is more in the nature of a right which can be waived; however, it only can be waived expressly. And it is exclusively within the government's power to waive it." *Id.* Although the defendant in *Yasak* failed to obtain a written conditional plea, the court held that "Rule 11(a)(2)'s intent and purpose have been fulfilled." *Id.* at 1000.

Although *Yasak* is a Seventh Circuit case, we have cited it for the proposition that, in the absence of a written conditional plea, the transcript of a plea hearing might give a sufficient "indication that [the defendant] specifically reserved this issue for appeal." *United States v. Martin*, 526 F.3d 926, 935 (6th Cir. 2008); *United States v. Ormsby*, 252 F.3d 844, 848 n.3 (6th Cir. 2001).[2]

We hold that Mastromatteo's failure to obtain a clear, written conditional plea is not a jurisdictional bar to our hearing this appeal. What is apparent from the plea hearing is that Mastromatteo made it clear that he wished to preserve his right to appeal, the government acknowledged that he could appeal, and the court accepted that. Despite technical infirmities, Mastromatteo's plea was indeed a conditional plea. The failure to follow the exact format of Rule 11(a)(2) is no bar to Mastromatteo's appeal because "Rule 11(a)(2)'s intent and purpose have been fulfilled." *Yasak*, 884 F.2d at 1000; *see also* FED. R. CRIM. P. 11(h) ("A variance from the requirements of this rule is harmless error if it does not affect substantial rights."). We, therefore, proceed to address Mastromatteo's arguments regarding the denial of the *Franks* hearing.

## III. ANALYSIS

### A. Denial of the *Franks* Hearing

#### 1. Standing

Before addressing the motion for a *Franks* evidentiary hearing, the district court correctly considered Mastromatteo's Fourth Amendment standing. Determining that a defendant has Fourth

---

[1] A defendant's failure to obtain a conditional plea does not bar us from hearing a defendant's challenges to his sentence. *See Pickett*, 941 F.2d at 417.

[2] We note that *Yasak* is not factually identical to Mastromatteo's case. In *Yasak*, the government agreed *both* at the district court *and* the appellate court that Yasak had entered a conditional plea. In this case, at the district court the government specifically stated that it was not agreeing to a conditional plea. However, the government followed that assertion by stating that "[i]t seems as if the defendant wanted to appeal that issue to the Court of Appeals, he may do that." J.A. at 229 (Plea Hr'g at 6:5-10). Therefore, the government's position at the district court was ambiguous.

Amendment standing is a prerequisite to granting a motion for a *Franks* hearing. *See United States v. Elkins*, 300 F.3d 638, 645 (6th Cir. 2002). "[T]he trial judge's findings of fact regarding the defendants' standing to challenge alleged Fourth Amendment violations are examined for clear error, while the legal determination of standing is reviewed *de novo*." *United States v. Pollard*, 215 F.3d 643, 646 (6th Cir.), *cert. denied*, 531 U.S. 999 (2000).

A defendant's standing is determined independently from his co-defendant's standing with regard to the same items and places that are searched. "[A] defendant has standing to challenge the admission of evidence only if the defendant's own constitutional rights have been violated. In cases involving Fourth Amendment violations, we determine standing by deciding whether a defendant can establish a legitimate expectation of privacy in the area searched or the items seized." *United States v. Davis*, 430 F.3d 345, 359-60 (6th Cir. 2005) (citations and internal quotation marks omitted) (noting that a co-defendant's standing has no effect on other defendants' standing); *United States v. Williams*, 354 F.3d 497, 510-11 (6th Cir. 2003). Thus, in *Davis*, one defendant lacked standing to challenge the search even though his co-defendant had standing; the reason for the difference was that the defendant who lacked standing "ha[d] no reasonable expectation of privacy either in Davis's vehicle or in the items seized from Davis's vehicle, because he 'had neither a property nor possessory interest' in them." *Davis*, 430 F.3d at 360 (quoting *United States v. Pino*, 855 F.2d 357, 360 (6th Cir.1988)). The question we must address is whether Mastromatteo had standing to challenge the search of the Lenfesty property.[3]

We conclude that the district court did not err in holding that Mastromatteo lacked standing to contest the search of the Lenfesty property. "It is well-established that a defendant claiming that a search violated his Fourth Amendment rights has the burden of demonstrating that he had a legitimate expectation of privacy in the place that was searched." *United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001). Mastromatteo, however, made no assertions regarding his connection to the Lenfesty property until well after the district court decided the standing issue. Mastromatteo failed to carry his burden and, based upon the information that the district court had in front of it at the time it addressed the standing question, the district court did not err in holding that Mastromatteo lacked standing to challenge the search of the Lenfesty property.

### 2. *Franks* **Hearing**

Even if Mastromatteo had standing to challenge the search of the 43008 Lenfesty property, we would still affirm his conviction because we believe the district court correctly denied the motion for a *Franks* hearing.

In *United States v. Graham*, 275 F.3d 490 (6th Cir. 2001), we clearly stated the standard of review for the denial of a *Franks* hearing:

> We review the district court's denial of a *Franks* hearing under the same standard as for the denial of a motion to suppress: the district court's factual findings are reviewed for clear error and its conclusions of law are reviewed de novo. *United States v. Hill*, 142 F.3d 305, 310 (6th Cir.1998). A defendant is entitled to a hearing to challenge the validity of a search warrant if he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [ ] the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). If, at the evidentiary hearing, "the allegation of perjury or reckless disregard is established by the defendant by a

---

[3]Although officers searched several properties, at oral argument Mastromatteo's counsel conceded that Mastromatteo lacked standing to challenge the search of any properties other than the Lenfesty property.

preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search" suppressed. *Id.* at 156.

*Graham*, 275 F.3d at 505. Although *Graham* is clear as to the appropriate standard of review, a more recent line of cases has apparently failed to notice our *Graham* holding. Recently, one panel of this court stated that we had not resolved whether an appeal of a *Franks* ruling is reviewed for clear error or given de novo review. *See United States v. Stuart*, 507 F.3d 391, 396-97 (6th Cir. 2007). The *Stuart* panel's sole support was another Sixth Circuit case, *United States v. Stewart*, 306 F.3d 295 (6th Cir. 2002). However, both *Stuart* and *Stewart* are more recent than *Graham*; therefore, *Graham* controls. *Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.").

To obtain a *Franks* hearing, the movant must provide a substantial preliminary showing that a false statement was made either knowingly or intentionally, or with reckless disregard for the truth. The movant must *also* show that the allegedly false statements were necessary for the magistrate's determination of probable cause. Therefore, "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks*, 438 U.S. at 171-72 (footnote omitted). What remains of the affidavit establishes probable cause if it "provide[s] the magistrate judge with a basis for finding there was a fair probability that contraband or evidence of a crime would be found at" the stated location. *Graham*, 275 F.3d at 504.

We conclude that the district court properly denied the motion for a *Franks* hearing. The district court correctly struck from the affidavit all references to the 2003 Ford F-250 pick-up truck, which the affidavit erroneously claimed was registered to Meffer. *Elkins*, 300 F.3d at 651 (upholding a district court's decision to strike from an affidavit references to a confidential source when it was in fact an anonymous source). The district court did not strike from the affidavit any of the remaining seven allegedly false statements, presumably because the district court concluded that the motion did not make a substantial preliminary showing that the affiant knowingly or intentionally made a false statement, or made a statement with reckless disregard for the truth. However, even if there were a substantial preliminary showing, the movant requesting a *Franks* hearing must also show that the allegedly false statements were necessary for the finding of probable cause. If we remove the references to the air vents at the Gratiot property, the statement that the March 8 odor was consistent with the February 15 and February 21 odors, the statement that Meffer bought brake cleaner and not just brakes, the statement that Meffer was not actually fixing the truck, the statement that Meffer took something from his truck into the Gratiot property on February 17, the statement that Meffer was one of the two individuals bringing items into the Lenfesty property on March 3, and the statement that Meffer was using hydrogen gas while working on the trailer, there still is enough in the affidavit to provide a magistrate with a basis for finding a fair probability of contraband at the searched locations.

Even after removing the allegedly false statements, the affidavit contains several unchallenged statements based upon several days of surveillance. This evidence includes the following:

1.  On February 12, two individuals entered the Gratiot property, dropping off and picking up unmarked bags.
2.  On February 12, a woman arrived at the Gratiot property, found no one home, made phone calls, left, and then returned to meet Meffer. On prior occasions, police had linked the woman's husband to methamphetamine.

3. On February 12, Meffer bought propane.
4. On February 15, officers noticed that the Gratiot address was protected by two surveillance cameras.
5. On February 15 and March 3, Meffer purchased spray paint.
6. On February 15, February 21, and March 8, a detective noticed an odor near the Gratiot property that was consistent between the first two days.
7. On March 1, a confidential informant identified the Gratiot address as a methamphetamine lab.
8. On March 3, Meffer visited the Lenfesty property. While he was there, individuals carried items into the building and worked on creating what appeared to be a secret compartment in a van.
9. Meffer associated with known methamphetamine users.

None of this remaining evidence is challenged, and the district court did not err in concluding that this provided a magistrate with an ample basis for finding a fair probability that contraband would be discovered at these searched locations. Thus, the affidavit supported a finding of probable cause even when we remove all of the allegedly false statements. For that reason, we affirm the district court's denial of Mastromatteo's motion for a *Franks* hearing.

**B. Sentence Reasonableness**

At Mastromatteo's sentencing, Mastromatteo's attorney asked the district court to impose a 60-month term of imprisonment. In support of his request, counsel stated "I think that [60 months] serves all the ends of justice to give him that mandatory minimum." J.A. at 295 (Sent. Hr'g at 19:20-25). On appeal, Mastromatteo argues that "the district court failed to establish an adequate basis for review of the reasonableness of its sentence by not addressing its rejection of Mastromatteo's request for a three month variance." Appellant Br. at 26.

We disagree and affirm Mastromatteo's sentence. Mastromatteo's attorney argued for a 60-month sentence on the basis of 18 U.S.C. § 3553(a), drawing from the language of the statute: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of the statute. 18 U.S.C. § 3553(a). The district court, although it did not specifically mention Mastromatteo's request for a 60-month sentence, did review each of the statutory factors listed in § 3553(a). The district court discussed the need to promote respect for the law and provide a just sentence; the district court discussed deterrence; the district court discussed the need to protect the public; and the district court discussed the need to provide Mastromatteo with job training and drug treatment. Without mentioning the 60-month-sentence in as many words, the district court still responded to the request. Mastromatteo sought a 60-month sentence on the basis of the § 3553(a) factors, and the district court sentenced Mastromatteo on the basis of those same factors. Thus, "[Mastromatteo]'s arguments were conceptually straightforward, and the district court imposed a within-guidelines sentence. Nothing in the 'record,' or the 'context' of the hearing, suggests that the court did not 'listen[ ]' to, 'consider[ ]' and understand every argument [Mastromatteo] made." *United States v. Vonner*, 516 F.3d 382, 388 (6th Cir. 2008) (en banc) (second and third alterations in original) (quoting *Rita v. United States*, ___ U.S ___, 127 S. Ct. 2456, 2469 (2007)). For that reason, we affirm Mastromatteo's sentence.

### IV. CONCLUSION

For the preceding reasons, we conclude that Mastromatteo lacks standing to challenge the search of the Lenfesty property, and we **AFFIRM** the district court's denial of the motion for a *Franks* hearing. We **AFFIRM** Mastromatteo's sentence.