NOT FOR FULL-TEXT PUBLICATION
File Name: 09a0382n.06

No. 07-6406

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

                                  ON APPEAL FROM THE

v.                                 UNITED STATES DISTRICT
                                        COURT FOR THE EASTERN

WAYNE MERRELL,                DISTRICT OF TENNESSEE

        Defendant-Appellant.

_____/

**BEFORE: MARTIN, SUHRHEINRICH and WHITE, Circuit Judges.**

**SUHRHEINRICH, Circuit Judge.** Defendant Wayne Merrell appeals the judgment of the district court following his conviction and sentencing for conspiring to manufacture more than 500 grams of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(viii). Defendant entered a conditional guilty plea reserving his right to challenge the denial of his suppression motion. On appeal, he contends that the district court erred (1) in concluding that he failed to show, pursuant to *Franks v. Delaware*,[1] that the affiant made a material omission with an intention to mislead by failing to indicate that the contraband was sent to a P.O. Box and not his residence, and (2) in holding that the affidavit demonstrated probable cause. We AFFIRM.

**I. Background**

**A. Facts**

_____

[1]*Franks v. Delaware*, 438 U.S. 154 (1978).

The following facts relevant to the issues on appeal are derived from the affidavit in support of the search warrant, the magistrate's report and recommendation, and the plea agreement. The information contained in the affidavit can be summarized as follows:

On April 20, 2006, Ricky Smith, Director of the Twelfth Judicial District Drug Task Force, prepared an affidavit in support of a search warrant for Defendant's residence, which provided the following information. Agents of the Twelfth Judicial Drug Task Force and the Tennessee Bureau of Investigation had been receiving complaints about a strong chemical odor coming from defendant's residence, as well as the large amount of short-term traffic to the home. Smith reported that on January 5, 2003, agents found 22 gallons of muriatic acid, a precursor chemical used in the manufacture of methamphetamine, approximately 100 yards from Merrell's residence. Further, on June 19, 2005, the TBI received a complaint from an anonymous woman stating that there was a bad odor coming from Defendant's residence and that there were cars coming and going to his residence and staying for only a few minutes.

Based on these ongoing complaints, the agents went to Defendant's house in February 2006, told him about the complaints, and sought consent to search his residence. Defendant declined the request to search, and the agents left.

Next, the affidavit explained that in January 2006, DEA agent Daniel Schmidt of the Seymour, Indiana Police Department learned that Gene William Wells, a California resident, was distributing methamphetamine precursor chemicals through an entity known as China Home Building Imports, Inc. After several emails, Wells shipped two kilograms of red phosphorous and some methamphetamine as a sample. On February 13, 2006, the agent sent Wells $3,000.00 via U.S. Postal money order, and on February 22, 2006, Wells shipped approximately 106 grams of crystal

methamphetamine to the agent Postal Express Mail. The return address on the package listed Wells and China Home Building Imports, Inc. A similar transaction occurred in March 2006 where the agent mailed money to Wells and received, in exchange, over 100 grams of crystal methamphetamine. The return address was the same as the previous package.

The affidavit continued that during their drug relationship, Wells informed the agent that he had a Canadian supplier for crystal iodine, but lacked a supplier for ephedrine. The undercover agent offered to provide ephedrine for $2,000.00 per pound, and Wells flew to Indiana to collect it. When Wells arrived in Indiana on April 1, 2006, he was arrested and subsequently agreed to cooperate. He told the agents he was supplying red phosphorous to twelve people in twelve states via the Internet.

In reviewing Wells's email account, DEA agents learned that Wells had been corresponding with Defendant since April 2005, and that Defendant had mailed Wells $1500 in exchange for precursor chemicals. They also learned that on March 28, 2006, Wells had emailed Defendant to inform him that Wells had 100% pure ephedrine for $10.00 a gram. On April 5, 2006, Defendant emailed Wells informing Wells that he had sent $990.00 to Wells via Western Union. Smith also stated that, based on his training and experience, methamphetamine laboratories emit a strong odor and that drug trafficking results in frequent, short-term traffic. Smith stated that Defendant was expecting 99 grams of pure ephedrine.

Based on his affidavit, Smith obtained a search warrant for Defendant's residence on April 20, 2006.

On April 21, 2006, law enforcement officers executed the warrant. The magistrate judge's report and recommendation following an evidentiary hearing found the following undisputed facts:

Agents arrived at Defendant's residence around 8:30 a.m. and knocked on the door. Defendant, his mother, and co-defendant Robert Newman were present. An officer handed Defendant a copy of the warrant. Defendant was placed in the kitchen with his mother. Newman was taken to a different area of the house. He was not handcuffed at that time. At approximately 10:00 a.m., DEA Special Agent Tony Isom advised Defendant of his *Miranda* rights. He also asked Defendant for consent to search the computers in the house. Defendant initially declined, but then changed his mind and signed a consent form.

Sometime between 10:30 and 11:30 a.m., officers took Defendant outside and placed him in handcuffs. One of the agents told Defendant that agents knew about his email communication with Wells and that the officers had found a substantial amount of equipment used to manufacture methamphetamine inside Defendant's residence. Isom testified that at this point Defendant started to talk, but that Isom stopped him and gave him his *Miranda* warnings again. The plea agreement reflects that Defendant told Isom that he had been manufacturing methamphetamine for six years, making one to two ounces per week during that period. He also stated that he sold two grams of methamphetamine each week and used 1.5 grams each day. Defendant said that he kept empty containers under a tarp because he knew they were toxic and was concerned about the environment.

In addition, the plea agreement provided that the agents found in Defendant's bedroom a small amount of methamphetamine, laboratory equipment, and two firearms. In the garage, they seized red phosphorous, psuedoephedrine, muriatic acid, iodine, Coleman fuel, antifreeze, acetone, hydrogen peroxide, lye, layered liquids, glassware, scales, tubing, condensers, and burners. Burn piles and empty chemical containers covered with tarps were found behind the residence.

## B. Procedural History

On April 25, 2006, Defendant and co-Defendant Robert Newman were charged by complaint with methamphetamine-related offenses. Thereafter, a federal grand jury returned a superceding indictment charging them with conspiracy to manufacture more than 500 grams of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(A)(viii) (Count One), aiding and abetting one another in the attempt to manufacture methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2 (Count Two), and aiding and abetting one another in possessing chemicals, products and materials used in the manufacture of methamphetamine in violation of 21 U.S.C. § 843(a)(6) and 18 U.S.C. § 2 (Count Four). Defendant was also charged with maintaining a drug house in violation of 21 U.S.C. § 856(a)(1), and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Defendant moved to suppress the evidence seized during the execution of the search warrant at his residence on the ground that the affidavit relied on stale and vague information and thus failed to establish probable cause. He also asserted that the affiant had intentionally omitted crucial information–namely, the address where he had received the precursor chemicals in the past and where the recently-ordered chemicals were to be shipped was a post office box and not his residence. Defendant argued that if this information had been presented, it would have negated any connection between his purchase of methamphetamine precursors and his residence, thereby further negating probable cause. Defendant also moved to suppress his statements to the DEA agent at the time of the search.

After an evidentiary hearing, the magistrate judge recommended that Defendant's motion to suppress be denied because "[t]he affidavit at issue unquestionably provides substantial, fresh, and police-corroborated information that the defendant was involved in illegal manufacturing of

methamphetamine." The magistrate judge found that Defendant satisfied the first prong of *Franks* because the affiant omitted the fact that Defendant had used a post office box to receive precursor chemicals, but concluded that a *Franks* hearing was unwarranted because the affidavit contained additional information linking Defendant's home to the alleged methamphetamine manufacturing operation.

The magistrate judge rejected Defendant's argument that his statements should have been suppressed, crediting Isom's testimony that he *Mirandized* Defendant twice, that Defendant's waiver of his right to remain silent was voluntary, and that the statements were not the product of an illegal search.

Defendant filed objections to the magistrate judge's recommendation regarding the validity of the search warrant and reiterated his request for a *Franks* hearing. He did not object to the portion of the report and recommendation about his motion to suppress statements.

On January 23, 2007, the district court overruled Defendant's objections. The district court agreed that a *Franks* hearing was not warranted, but for a different reason: that Defendant had failed to make a strong preliminary showing that the affiant had engaged in a deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit. The court therefore found it unnecessary to reach the probable cause inquiry, but considered it anyway and found probable cause. The court therefore denied Defendant's  motions to suppress.

On August 9, 2007, Defendant entered a conditional guilty plea to Count One, reserving his right to appeal the denial of his suppression motion. On November 15, 2007, he was sentenced to 240 months' imprisonment, followed by ten years' supervised release. This timely appeal followed.

## II.  Analysis

Defendant alleges that the warrant affidavit omitted material information that Gene Wells sent the contraband to Defendant's post office box and not his place of residence and that, without this information, there was no nexus to any criminal activity to the place to be searched, namely Merrell's residence. Defendant further claims that the additional information about anonymous complaints and the muriatic acid containers was unreliable and stale. Thus, he argues that this Court should find that the warrant lacked probable cause and reverse the decision of the district court denying his motion to suppress. He also asks that this Court suppress the evidence found at his house and the statements made during the unconstitutional search of his home.

In considering the district court's denial of a *Franks* hearing, the district court's factual findings are reviewed for clear error and its conclusions of law are reviewed de novo. *United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001); *see also United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008) (noting that *Graham* provides the standard of review for the denial of a *Franks* hearing, despite statements in *United States v. Stuart*, 507 F.3d 391, 396-97 (6th Cir. 2007), and *United States v. Stewart*, 306 F.3d 295 (6th Cir. 2002), that this court had not resolved the issue). *Franks* recognizes a defendant's right to challenge the sufficiency of a search warrant. A defendant is entitled to a hearing to challenge the validity of a search warrant if he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-156. If, after the allegedly false or reckless statements are set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks*, 438 U.S. at 171-72. The redacted affidavit establishes probable cause if it "provide[s] the magistrate judge with a basis

for finding there was a fair probability that contraband or evidence of a crime would be found at" the stated location. *Graham* 275 F.3d at 504.

The *Franks* test extends to material omissions as well. *See United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990). However, this Court has recognized that material omissions are less likely to present a question of impermissible official conduct than affirmative falsehoods. *Id.*; *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997). This is because an allegation of omission "potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit." *Martin*, 920 F.2d at 398 (internal quotation marks and citation omitted). If the defendant succeeds in his threshold showing of "deliberate falsehood" or "reckless disregard for the truth" in this scenario, the court must consider the affidavit including the omitted portions and determine whether probable cause still exists. *Atkin*, 107 F.3d at 1217; *United States v. Bonds*, 12 F.3d 540, 568 n.26 (6th Cir. 1993).

### A. Material Omission

Defendant alleges that law enforcement agents failed to advise the court that the shipments from Wells were to Defendant's post office box and not his place of residence. Defendant alleges the omission shows either an intent to mislead or a reckless disregard for the truth because the location to be searched is the principal inquiry in any probable cause determination.

We conclude that the district court properly denied the motion for a *Franks* hearing. As the district court observed, although Defendant showed that an omission occurred, he made no showing that the affiant intended to mislead the judge by that omission. "[E]xcept in the *very* rare cares where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of

-8-

probable cause, *Franks* is inapplicable to the omission of disputed facts." *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998) (emphasis in original); *Hale v. Kart*, 396 F.3d 721, 727 (6th Cir. 2005) (same; citing *Mays*).

**B. Probable Cause**

However, even if there was a substantial preliminary showing, the omitted statements did not destroy probable cause. This Court reviews the sufficiency of an affidavit in a "commonsense, rather than hypertechnical manner," and asks "whether the [judge] had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Greene*, 250 F.3d 471, 478-79 (6th Cir. 2001) (internal quotation marks and citation omitted). "Probable cause for the issuance of a search warrant is defined in terms of whether the affidavit sets out facts and circumstances which indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Finch*, 998 F.2d 349, 352 (6th Cir. 1993) (internal quotation marks and citation omitted). The warrant must establish "a nexus between the place to be searched and the evidence to be sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). "'The critical element in a reasonable search is not that the owner of property is suspected of crime but that there is reasonable cause to believe that the specific "things" to be searched for and seized are located on the property to which entry is sought.'" *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)).

Smith provided ample evidence demonstrating probable cause under the totality of the circumstances. This included the 22 gallon amount of muratic acid found near Defendant's house three years earlier; the numerous anonymous tips about chemical odors coming from the house and

the high volume of short term visitors there; Defendant's email correspondence with and purchases from Wells, a supplier of precursor materials for manufacturing methamphetamine; and Defendant's email to Wells several days earlier that he was expecting Wells to mail ephedrine, another precursor material, to him. Although Wells mailed the materials to Defendant's post office box rather than his home, as both the magistrate judge and district court noted, it was reasonable to suspect evidence of such activities would be found at Defendant's home because "Defendant cannot manufacture methamphetamine in the post office." We acknowledge that some of the information would be stale if viewed in a vacuum. However, given the relevancy of the latest Wells' transaction, the older information was relevant to provide context; specifically that it was likely that the recently ordered materials were for use at Defendant's residence.

Defendant also challenges the veracity of the anonymous reports about odors and traffic at his house, claiming they have no weight in the probable cause assessment because they were uncorroborated. *See Carpenter*, 360 F.3d at 595 (holding that a warrant affidavit failed to establish probable cause where it was based almost exclusively on the uncorroborated testimony of an unproven informant); *United States v. Campbell*, 256 F.3d 381, 388 (6th Cir. 2001) (noting that a search warrant based solely on anonymous tips lacks probable cause). Both the district court and magistrate judge agreed that, standing alone, this evidence would not establish probable cause. However, when considered along with the evidence that Defendant was buying precursor chemicals from Wells to make methamphetamine, this evidence became significantly more credible. We agree.

Next, Defendant asserts that the evidence of muriatic acid found near his house three years earlier as well as the evidence that he bought precursor chemicals from Wells three years earlier was stale. We disagree. Defendant ordered a large amount of ephedrine, a precursor chemical for

methamphetamine, about two weeks before the affidavit was prepared, clearly reflecting that the methamphetamine-manufacturing operation at his house was ongoing. *See Greene*, 250 F.3d at 481 (stating that the passage of time becomes less significant when the crime is ongoing or continuous and the place to be searched is a secure operational base for the crime); *cf. United States v. Hython*, 443 F.3d 480, 485-86 (6th Cir. 2006) (noting that the sale of drugs out of a residence is not inherently ongoing). Even assuming the disputed information was stale, the second shipment provided adequate fresh corroboration to permit a finding of probable cause. *See United States v. Spikes*, 158 F.3d 913, 924 (6th Cir. 1998) (stating that "where recent information corroborates otherwise stale information, probable cause may be found") (internal quotation marks and citation omitted).

Defendant contends that because he used a post office box, there was no nexus between his receipt of precursor chemicals from Wells and his home. This argument must be rejected. As the district court observed, the magistrate judge had a substantial basis for concluding that probable cause existed at his home in part because "in the case of drug dealers, evidence is likely to be found where the dealers reside." *Frazier*, 423 F.3d at 537 (finding that the affidavit established a strong nexus between the defendant's drug dealing and his home) (internal quotation marks omitted); *see also United States v. Miggins*, 302 F.3d 384, 394 (6th Cir. 2002) (citing cases); *United States v. Jones*, 159 F.3d 969, 974-75 (6th Cir. 1998) (same; finding probable cause to search the suspect's residence though he was not seen selling drugs there but on the premises). When coupled with the anonymous tips, and the muriatic acid, and the fundamental fact that Defendant could not manufacture methamphetamine in the United States Post Office, the affidavit showed a fair probability that Defendant did so at his home. *See United States v. Higgins*, 557 F.3d 381, 389 (6th

Cir. 2009) (stating that "[t]he Fourth Amendment requires that a warrant must be supported by probable cause, i.e. a fair probability that contraband or evidence will be found in a particular place") (internal quotation marks and citation omitted); *cf. Carpenter*, 360 F.3d at 594 (holding that an affidavit describing a marijuana field near the residence to be searched and a road between failed to establish the required nexus between the premises and the criminal activity).

Alternatively, as the United States asserts, even if the warrant were not supported by probable cause, the agents relied upon it in good faith pursuant to *United States v. Leon*, 468 U.S. 897 (1984), such that suppression is not warranted. It was not unreasonable for the officers to have relied on the warrant because it was reasonable to believe that Defendant was manufacturing methamphetamine and that evidence of such activity would be found at his home. *See Frazier*, 423 F.3d at 536-37 (applying *Leon* good faith exception even though warrant lacked probable cause because it was based almost exclusively on the uncorroborated testimony of an unproven informant as there was a sufficiently strong nexus between the defendant's alleged drug dealing and his home; and cases discussed therein).

## C. Suppression of Statements

Defendant also suggests that the statements he made at the time of the search should be suppressed because the underlying search of his residence was unlawful. First, the claim is waived and unreviewable because Defendant failed to object to the magistrate judge's report and recommendation. *See Thomas v. Arn,* 728 F.2d 813 (6th Cir. 1984), *aff'd* 474 U.S. 140 (1985); *Campbell*, 261 F.3d at 631-32; *United States v. Walters*, 638 F.2d 947, 949 (6th Cir. 1981). The report and recommendation in this case provided adequate notice of Defendant's right to object. In any event, the search was lawfully executed pursuant to a warrant supported by probable cause.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**